IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARRIE M.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 1708 |
| v. | ) | |
| | ) | Magistrate Judge |
| KILOLO KIJAKAZI, Acting | ) | Maria Valdez |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Carrie M.'s claim for Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No. 13] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 18] is denied.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

# BACKGROUND

## I. PROCEDURAL HISTORY

On June 11, 2018, Plaintiff filed a claim for SSI, alleging disability since November 2, 2007. The claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). A telephonic hearing was held on April 29, 2021, and all participants attended the hearing by telephone. Plaintiff appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On June 3, 2021, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date of June 11, 2018. At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative joint disease of the right knee; morbid obesity; asthma; lymphedema/lipedema; depression; and posttraumatic stress disorder (PTSD). The

ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: can stand/walk for only two hours of an eight-hour workday; can occasionally push/pull with her bilateral lower extremities; can occasionally climb ramps and stairs; cannot climb ladders, ropes, or scaffolds; can occasionally balance, kneel, stoop, crouch, and crawl; must avoid concentrated exposure to extreme temperatures, humidity, and pulmonary irritants, and to hazards such as unprotected heights and dangerous moving machinery; is able to understand, remember, and carry out instructions for more than simple tasks but not complex tasks with sufficient persistence, concentration, and pace to timely and appropriately complete such tasks; can have occasional contact with the public, coworkers, and supervisors; can adapt to routine workplace changes; and cannot be required to perform fast-paced production rate work or meet strict quota requirements, but can meet end of the day work requirements. At step four, the ALJ concluded that Plaintiff would be unable to perform her past relevant work as a custodian. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act.

## DISCUSSION

### I.  ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.  JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

5

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

6

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ failed to properly assess the effects of Plaintiff's morbid obesity on her ability to function; (2) the ALJ ignored or mischaracterized many findings regarding Plaintiff's physical impairments; (3) the ALJ failed to support her assessment of opinion evidence with substantial evidence; and (4) the ALJ failed to consider the combined effects of Plaintiff's physical and mental impairments.

For her first argument, Plaintiff argues that the ALJ did not adequately account for her obesity. As set forth above, the ALJ determined that Plaintiff's morbid obesity constitutes a severe impairment. (R. 22.) Pertinent to that impairment, consultative examiner Dr. Mahesh Shah – who noted that Plaintiff's obesity was "getting worse progressively" – assessed Plaintiff's obesity as follows:

> EXTREMITIES: The claimant had extensive proximal obesity. She had fat pads hanging in her thighs. She had very large varicose veins in both lower extremities. She had 1+ edema on her lower extremities. The rest of the extremity examination was normal.
>
> MUSCULOSKELETAL: Range of motion in all the joints of the upper extremities and lower extremities was diminished by 25° - 30° because of the obesity. Gait was slow wide-based and limping. The claimant was able to bear her own weight. She does not use any assisting devices for ambulation. She could not heel-walk, toe-walk, or squat down.

(*Id.* at 838.) Dr. Shah concluded that Plaintiff's "[m]orbid obesity" made all of Plaintiff's "problems worse." (*Id.* at 839.)

In her decision, the ALJ noted that "[w]hen she applied for benefits in June 2018, the evidence shows the claimant was being treated primarily for obesity" and

7

"[s]he was reportedly 64" tall and weighed 400 pounds." (R. 27.) The ALJ further noted that upon examination in September 2020 Plaintiff "weighed 380 pounds" and she had "difficulty standing on her heels/toes, squatting, and walking" and "was reportedly unable to climb up onto the examination table." (*Id.*) The ALJ stated that "it was reasonable to expect that [Plaintiff's] obesity would have affected her right knee, breathing, circulation, and mental health." (*Id.* at 31.) However, noting that Plaintiff "was able to stand and walk without assistive devices" and was "advised to increase her walking," the ALJ determined in a conclusory fashion that "claimant's obesity, in combination with her other impairments, both physical and mental, supports the work capacity that I have adopted." (*Id.* at 27.)

An ALJ must "carefully consider the combined effect that obesity has on the claimant's other impairments." *Patrice R. v. Saul*, No. 19 C 1285, 2021 WL 410662, at *5 (N.D. Ill. Feb. 5, 2021) (citations omitted). Along those lines, the ALJ "must analyze a claimant's impairments in combination, including how obesity aggravates or exacerbates other conditions." *Gary R. v. Kijakazi*, No. 20 C 6109, 2022 WL 4607581, at *15 (N.D. Ill. Sept. 30, 2022) (citation omitted). "This is because the combined effects of obesity with other impairments may be greater than might be expected without obesity." *Theresa M. v. Kijakazi*, No. 20 CV 481, 2022 WL 4552093, at *5 (N.D. Ill. Sept. 29, 2022) (citation omitted). *See also Villano v. Asttrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("[T]he ALJ must specifically address the effect of obesity on a claimant's limitations because, for example, a person who is

8

obese and arthritic may experience greater limitations than a person who is only arthritic.").

In this case, the Court finds that the ALJ did not carefully consider and analyze Plaintiff's obesity, as she was required to do. The ALJ's conclusory finding that the RFC accounted for Plaintiff's obesity is insufficient. *See Theresa M.*, 2022 WL 4552093 at *5 ("The ALJ's conclusory assertion that there was 'no indication' that plaintiff's obesity would preclude her from performing light work is in obvious tension with the fact of plaintiff's morbid obesity itself, her severe knee and spinal impairments, and evidence that plaintiff had difficulty sitting for prolonged periods of time."); *Dennis S. v. Kijakazi*, No. 19 CV 2245, 2022 WL 425715, at *6 (N.D. Ill. Feb. 10, 2022) ("The ALJ does not articulate *how* she considered Plaintiff's obesity in combination with his other impairments, nor does she explain why his obesity in combination with another specific impairment or impairments supports her RFC finding, other than to state in a conclusory fashion that it does."); *Bush v. Berryhill*, No. 17 C 5335, 2018 WL 6192172, at *5 (N.D. Ill. Nov. 28, 2019) ("Simply stating that obesity has been accounted for does not allow this Court to review whether the ALJ's evaluation was legally sufficient.") (citations omitted). The ALJ did not sufficiently explain why Plaintiff being advised to increase her walking and being able to walk without an assistive device ameliorated the extensive and documented problems caused by Plaintiff's morbid obesity, and the requisite logical bridge is therefore missing. *See Michael C. v. Saul*, 408 F. Supp. 3d 919, 927 n.4 (N.D. Ill. 2019) (ALJ must "discuss plaintiff's obesity in combination with his other

9

impairments and build the required logical bridge"); *Dwayne M. v. Berryhill*, No. 17 C 7350, 2019 WL 2123586, at *6 (N.D. Ill. May 15, 2019) ("[T]he ALJ was within his right to determine that plaintiff's obesity did not affect his RFC, but not without articulating a logical bridge from the evidence that plaintiff was obese to any conclusion that plaintiff's obesity had no impact on his RFC.").

Ultimately, the inadequacy of the ALJ's obesity analysis requires that this matter be remanded. *See Jacob D. v. Kijakazi*, No. 20-CV-0554, 2021 WL 3674610, at *4 (N.D. Ill. Aug. 19, 2021) ("The Court must remand on the ALJ's inadequate consideration of Plaintiff's obesity."); *Carlos J. v. Saul*, No. 19 C 2453, 2020 WL 4815951, at *8 (N.D. Ill. Aug. 19, 2020) ("On remand, the ALJ shall analyze what effect Carlos's obesity has on his left foot condition and his ability to perform sedentary work."); *Smith v. Berryhill*, No. 16 CV 9976, 2018 WL 2846363, at *6 (N.D. Ill. June 11, 2018) ("On remand, the ALJ should better consider and articulate the combined effect, if any, of Claimant's morbid obesity and her other impairments (severe or not) on her ability to work."); *Zant v. Berryhill*, No. 17 C 4520, 2018 WL 3381408, at *5 (N.D. Ill. July 11, 2018) ("On its face, the ALJ's conclusion that a morbidly obese person who suffers from arthritis could work at a job that requires prolonged standing, let alone the determination that he could engage in occasional crawling, climbing, stooping, kneeling, and crouching, is a conclusions that strains credulity. To support such a determination, the ALJ must build a logical bridge from evidence to conclusion. The ALJ failed to do so here, an error necessitating remand.") (citations and internal quotations omitted).

Based on its conclusion that remand is necessary for the above reasons, the Court need not explore in detail the remaining errors claimed by Plaintiff. The Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found. Indeed, the Court admonishes the Commissioner that, on remand, special care should be taken to ensure that all of Plaintiff's physical impairments are properly assessed, the opinion evidence is properly evaluated, and the combined effects of Plaintiff's impairments are properly considered.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No. 13] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 18] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**             **ENTERED:**

*[signature: Maria Valdez]*

**DATE:     March 31, 2023**          _____
                                **HON. MARIA VALDEZ**
                                **United States Magistrate Judge**

11